UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| Ivan Suzman,<br>    Plaintiff,<br><br>v.<br><br>Brenda Harvey, in her official capacity<br>as Commissioner, State of Maine<br>Department of Health and Human Services,<br>    Defendant | *<br>*<br>*<br>*  CIVIL ACTION NO.<br>*<br>*<br>*<br>*<br>* |

**PLAINTIFF'S COMPLAINT**
**DECLARATORY AND INJUNCTIVE RELIEF SOUGHT**

Plaintiff, Ivan Suzman, by and through his attorneys, hereby complains against Defendant, Brenda Harvey, in her official capacity as Commissioner of State of Maine Department of Health and Human Services, as follows:

**I. JURISDICTION AND PARTIES**

1. This action arises under the Social Security Act.

2. This court has proper subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and 28 U.S.C. §§ 1343(a)(3) and (4).

3. Declaratory, injunctive, and other appropriate relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper under 28 U.S.C. § 1391(b).

5. Ivan Suzman is a fifty-seven year old resident of Cumberland County, State of Maine.

6. Defendant Brenda Harvey is the Commissioner of the Maine Department of Health and Human Services ("DHHS"), the single state agency responsible for the

administration of MaineCare, Maine's Medicaid program. Harvey's responsibilities include the administration and proper implementation of the MaineCare program's policies and procedures.

## II. SUMMARY OF THE MEDICAID PROGRAM

7. The federal Medicaid program, under Title XIX of the Social Security Act, is a joint federal-state medical assistance program for certain groups of low-income persons. See 42 U.S.C. § 1396 et seq. One of the purposes of the Medicaid program is to provide "services to help such families and individuals attain or retain capability for independence or self-care." Id. at § 1396.

8. At the federal level, the Medicaid program is administered by the United States Department of Health and Human Services' Centers for Medicare and Medicaid ("CMS").

9. States are not required to participate in Medicaid. However, if a state chooses to participate in Medicaid, it must comply with the requirements imposed both by Congress in the federal Medicaid Act itself, and by the Secretary of HHS.

10. A state Medicaid plan must provide eligible participants with certain specified health care services. 42 U.S.C. § 1396a(a)(10)(A)(i) (incorporating 42 U.S.C. § 1396d(1)-(5), (17), and (21)). In addition to these mandatory services, the Medicaid Act permits, but does not require, a state plan to provide other specified optional medical assistance services. 42 U.S.C. § 1396d(a). If a state chooses to provide such optional services, it must provide those services to all eligible persons throughout the state who need them.

11. The State of Maine has opted to participate in the Medicaid program under the federal Medicaid Act. DHHS is the single state agency that administers the Maine Medicaid program, known as MaineCare. DHHS has promulgated regulations to carry out the MaineCare program. Me. Dep't of Hum. Serv., 10 144 C.M.R. Ch. 101 (hereinafter "MaineCare Benefits Manual").

12. As a state that participates in Medicaid, Maine is required to provide a variety of services. 42 U.S.C. § § 1396d(a)(7),(13),(15),(23),(19) and (24).

13. Included among the numerous services the State of Maine provides are Nursing Home and Home and Community Based Waiver Programs (HCBS).

14. As an alternative to Nursing Home care, a state may offer, provide, and receive federal reimbursement for HCBS for individuals eligible for nursing home care if the state obtains a "waiver" from the Secretary of the HHS. Maine has several HCBS waiver programs, which allow individuals who would otherwise require care in a nursing home to receive services in their own homes or in home-like settings in the community. 42 U.S.C. § 1396n; 42 C.F.R. § 441.300. Under federal regulations, in order to participate in the HCBS program, states must provide assurance that when a recipient is determined to be likely to require the level of care provided in a nursing home, the recipient or his or her legal guardian will be informed of any feasible alternatives available under the waiver, and given the choice of either nursing home or HCBS. 42 C.F.R. § 441.302(d)(I)-(2); 42 U.S.C. § 1396n(c)(2)(C).

15. In addition, the State of Maine must make available a variety of individual and group providers qualified to provide Maine's various Medicaid services. 42 C.F.R. § 441.61(b). Maine is required to make sufficient payments to providers to ensure that care

and services are available, at least to the extent that such care and services are available to the general population in the geographic area.  42 U.S.C. § 1396a(a)(30)(A).

16.     All services must be provided in the most integrated setting appropriate. 42 U.S.C. § 12132; 28 U.S.C.§ 130(d); 29 U.S.C. § 794; 45 C.F.R.§ 84.4(b)(2).

### III. STATEMENT OF FACTS

17.     Plaintiff Ivan Suzman has younger onset Parkinson's disease and is a long-time MaineCare member who receives services under MaineCare's Home and Community Benefits Program for the Physically Disabled.  Prior to June 21, 2007, Plaintiff had been assessed as needing, and was in fact receiving 80 hours of Personal Care Attendant ("PCA") services per week under MaineCare.  These PCA services help Plaintiff to live safely in his home and community and to avoid institutionalization.

18.     Even with the 80 hours of MaineCare-approved PCA services, however, Plaintiff felt he needed more assistance with his daily activities.  As a result, Plaintiff purchased 23 hours of additional PCA services using his own resources.  These hours supplemented the 80 hours that the MaineCare program was providing.

19.     Because MaineCare allows for reimbursement of up to 86.25 PCA hours per week, Plaintiff, on or about June 11, 2007, requested a new medical eligibility assessment to see if MaineCare would reimburse him for the maximum 86.25 hours.

20.     On or about June 21, 2007, a representative of the State's Assessing Services Agency ("ASA"), Goold Health Systems, met with the Plaintiff to perform the requested assessment.

21.     The representative determined that Plaintiff's PCA services should be not be increased to 86.25 hours, that 80 PCA hours was what Plaintiff needed, and further,

that Plaintiff's PCA hours should be reduced from 80 hours to 57 hours per week because Plaintiff was receiving 23 hours of PCA services through use of his own resources.

22. Plaintiff filed a timely administrative appeal of the reduction of his PCA services.

23. A hearing was held on Plaintiff's appeal on July 30, 2007.

24. On September 28, 2007, the hearing officer issued a recommended decision, finding that Mr. Suzman's PCA services should be restored to 80 hours per week. *See Exhibit A*.

25. The hearing officer's decision was based on the fact that "the additional service hours paid for by Mr. Suzman at his own expense do not amount to a duplication of services," and that "the type of services contemplated by the regulation do not reasonably include those paid for by a member at his or her own expense." The hearing officer found that "such an interpretation would, in effect, amount to requiring the member to pay for a portion of services for which he or she has already been found eligible for MaineCare reimbursement."

26. On November 16, 2007, however, the Commissioner of DHHS reversed the hearing officer's recommended decision, reducing Mr. Suzman's PCA services again to 57 hours per week. *See Exhibit B*.

27. The Commissioner's decision was based on the fact that Mr. Suzman received PCA services "above and beyond the 80 hours he had been receiving in MaineCare paid home care services" as a result of his own "bartering," and that "MaineCare programs do not supplant resources available through other programs, providers, friends, etc."

28. The Commissioner's decision relied on MaineCare Benefits Manual, Ch. II, § 22.02-4, which reads, in relevant part, that a MaineCare member's Authorized Plan of Care must give "consideration to the member's living arrangement, informal supports, and services provided by other public or private funding sources to assure non-duplication of services.…"

29. This section of the MaineCare Benefits Manual conflicts with the Federal Medicaid statute, which provides that state medical plans must include "reasonable standards … for determining … the extent of medical assistance under the plan which … (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21..."  42 U.S.C. § 1396a(a)(17).

30. Because the state regulation conflicts with Federal law, Defendant cannot use it as a basis for reducing services that Plaintiff is medically eligible to receive.

31. Plaintiff has suffered injury as a result of Defendant's decision to reduce the amount of PCA services he is eligible to receive under MaineCare, and will continue to suffer injury unless Defendant is enjoined by this Court.

## IV. CLAIMS FOR RELIEF

### COUNT I

32. Plaintiff repeats the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. Defendant's regulation, MaineCare Benefits Manual, Ch. II, § 22.02-4, which allows DHHS to consider the financial responsibility of individuals other than a

6

spouse or parent when determining the extent of medical assistance that will be provided to a member, is contrary to the requirements of the federal Medicaid Act, 42 U.S.C. § 1396a(a)(17)(D), and is therefore preempted by the Supremacy Clause of the U.S. Constitution, art. IV.

## COUNT II

34.     Plaintiff repeats the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

35.     Defendant's regulation, MaineCare Benefits Manual, Ch. II, § 22.02-4, violates the requirements of the federal Medicaid Act, 42 U.S.C. § 1396a(a)(17)(D), enforceable by Plaintiff pursuant to 42 U.S.C. § 1983, in that it allows DHHS to consider the financial responsibility of individuals other than a spouse or parent when determining the extent of medical assistance that will be provided to a member

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

A.     Enter judgment on behalf of Plaintiff;

B.     Issue a declaratory judgment holding that Ch. II, § 22.02-4 of the MaineCare Benefits Manual violates the federal Medicaid Act, 42 U.S.C. § 1396a(a)(17) and is thus invalid; and that Ch. II, § 22.02-4 of the MaineCare Benefits Manual conflicts with the federal Medicaid Act, 42 U.S.C. § 1396a(a)(17) and is thus preempted by the Supremacy Clause of the U.S. Constitution, art. IV;

C.     Enjoin Defendant from enforcing Ch. II, § 22.02-4 of the MaineCare Benefits Manual;

D. Award Plaintiff attorney's fees, including legal expenses, and costs; and

E. Grant Plaintiff such other and further relief as may be just and proper.

Dated: 12/14/07

Respectfully submitted,

/s/ Ross A. Doerr

_____
Ross A. Doerr, Esq., Bar No. 9952
rdoerr@drcme.org

/s/ Sean Ociepka

_____
Sean Ociepka, Esq., Bar No. 10041
sociepka@drcme.org

Attorneys for Plaintiff
Disability Rights Center
P.O. Box 2007
Augusta, Maine 04338
(207) 626-2774