UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IVAN SUZMAN,                                  ) | |
|                                                   *Plaintiff*                 ) | |
| v.                                                            ) | Docket No. 07-217-P-S |
| BRENDA M. HARVEY,                      ) <br> **Commissioner, Maine Department of**  ) <br> **Human Services,**                                ) <br>                                                   *Defendant*              ) | |

### RECOMMENDED DECISION ON MOTION TO DISMISS

The defendant, commissioner of the Maine Department of Human Services, moves to dismiss the complaint in this action arising under the MaineCare Home and Community Benefits for the Physically Disabled Program. I recommend that the court grant the motion in part.

### I.  Applicable Legal Standard

The motion invokes Fed. R. Civ. P. 12(b)(6) in its title. Defendant's Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(6) ("Motion") (Docket No. 5)  at 1. As the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[1]

---

[1] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*,

1

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id.* "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## II.  Factual Background

The complaint makes the following relevant allegations.

The plaintiff, a 57-year-old resident of Cumberland County, Maine, suffers from younger onset Parkinson's disease and receives services under the Home and Community Benefits Program for the Physically Disabled, which is operated by the Maine Department of Human Services under its MaineCare version of the federal Medicaid Act, 42 U.S.C. § 1396, *et seq*. Complaint (Docket No. 1) ¶¶ 5, 7, 11, 17.  He was assessed as needing and was in fact receiving 80 hours of Personal Care Attendant ("PCA") services per week under MaineCare. *Id*. ¶ 17.  The plaintiff purchased an additional 23 hours per week of additional PCA services using his own resources.  *Id*. ¶ 18.  On June 11, 2007, the plaintiff requested a new medical eligibility assessment to see if Maine Care would reimburse him for the maximum allowable 86.25 PCA hours per week. *Id*. ¶ 19.  The program representative determined that that the plaintiff needed

---

127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46).  The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

2

only 80 PCA hours per week and that the plaintiff's MaineCare hours should be reduced to 57 hours per week because he was receiving 23 PCA hours per week through use of his own resources.  *Id.* ¶ 21.

The plaintiff filed a timely administrative appeal of the reduction in his PCA benefits.  *Id.* ¶ 22.  A hearing was held on the appeal on July 30, 2007.  *Id.* ¶ 23.  On September 28, 2007, the hearing officer issued a recommended decision, finding that the plaintiff's PCA services should be restored to 80 hours per week.  *Id.* ¶ 24.  The hearing officer found that the additional PCA hours paid for by the plaintiff did not amount to a duplication of services and that the type of services contemplated by the applicable regulation did not reasonably include those paid for by a recipient at his own expense.  *Id.* ¶ 25.  The hearing officer found that the defendant's interpretation of the applicable regulations would amount to requiring a recipient to pay for a portion of the services for which he had already been found eligible for MaineCare reimbursement.  *Id.*

On November 16, 2007, the defendant reversed the hearing officer's recommended decision, again reducing the plaintiff's benefits.  *Id.* ¶ 26.  That reversal was based on a determination that "MaineCare programs do not supplant resources available through other programs, providers, friends, etc."  *Id.* ¶ 27.  The defendant relied on MaineCare Benefits Manual, ch. II, § 22.02-4, which provides, in relevant part, that a recipient's Authorized Plan of Care must give "consideration to the member's living arrangement, informal supports, and services provided by other public or private funding sources to assure non-duplication of services[.]"  *Id.* ¶ 28.

### III.  Discussion

The complaint alleges, in two counts, that the defendant's regulation, MaineCare Benefits Manual, ch. II, § 22.02-4, is contrary to the requirements of 42 U.S.C. § 1396a(a)(17)(D), violates its requirements, and is preempted by that statute.  Plaintiff's Complaint (Docket No. 1) ¶¶ 33, 35.  The defendant responds that the state regulation does not conflict with the federal statute, and so is not preempted, and that the statute does not provide the plaintiff with a private right of action against the state.  Motion at 2, 5.  She contends that her decision "was solely based on Suzman's need for MBM section 22 services as assessed by Goold Health Systems, DHHS' agent[]" and not on the regulation cited in the complaint.  *Id*. at 3.  However, she does not press this factual argument (which in any event would be more suited to a motion for summary judgment), but rather addresses the plaintiff's claims directly.

### A.  Standing

The defendant's standing argument is addressed only to Count II of the complaint.  Motion at 5.  That count is asserted under 42 U.S.C. § 1983.  Complaint ¶ 35.  Two federal circuit courts have held that 42 U.S.C. § 1396a(a)(17), the statutory subsection invoked by the plaintiff, Complaint ¶ 35, does not provide a private right of action enforceable under section 1983.  *Lankford v. Sherman*, 451 F.3d 496, 509 (8th Cir. 2006); *Watson v. Weeks*, 436 F.3d 1152, 1162 (9th Cir. 2006).

The statute provides, in relevant part:

> A State plan for medical assistance must –
> \* \* \*
> (17) . . . include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan who are not receiving aid or assistance under any plan of the State approved under . . . this chapter, and with respect to whom supplemental security income

> benefits are not being paid . . ., based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and . . . as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits, (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or . . . is blind or permanently and totally disabled, . . . and provide for flexibility in the application of such standards with respect to income by taking into account . . . the costs . . . incurred for medical care or for any other type of remedial care recognized under State law[.]

42 U.S.C. § 1396a(a)(17).

The plaintiff contends that this court should not follow the lead of the Eighth and Ninth Circuits on this question but rather find, in two decisions of the First Circuit concerning other subsections of section 1396a(a), *Bryson v. Shumway*, 308 F.3d 79 (1st Cir. 2002), and *Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50 (1st Cir. 2004), guidance to reach an opposite result with respect to subsection (D) of subsection 17 of the statute at issue. Plaintiff's Opposition to Defendant's Motion to Dismiss (Docket No. 6) at 9-12.

The plaintiff's approach cuts too finely. Both *Lankford* and *Watson* are directly applicable to his claim, because both address the "reasonable standards" language of section 1396a(a)(17), of which subpart D is an integral part. Subpart D cannot be construed, as the plaintiff would have it, separately from the "reasonable standards" language. Subpart D merely states one of several areas which the "reasonable standards" must address.

Nothing in *Bryson* or *Ferguson* requires rejection of the *Lankford/Watson* holdings. In *Bryson*, the First Circuit found that 42 U.S.C. § 1396a(a)(8) "on its face, does intend to benefit

5

the plaintiff" because it requires that medical assistance "shall be furnished with reasonable promptness to all eligible individuals."  308 F.3d at 88.  In *Ferguson*, the First Circuit found that 42 U.S.C. § 1396a(a)(30)(A), "has no 'rights creating language' and identifies no discrete class of beneficiaries," focusing instead "upon the state as the person regulated rather than individuals protected."  362 F.3d at 57.  The First Circuit held that this subsection did not create a right of action under section 1983.  *Id*. at 58-59.  Subsection 1396a(a)(17) similarly is focused on the state and does not identify a "discrete class of beneficiaries."  Indeed, the Ninth Circuit cited *Bryson* in *Watson*, evidencing its awareness of the distinction between subsection (a)(8) and subsection (a)(17) in this regard.  436 F.3d at 1159 n.8.

Count II should be dismissed.  *See Mundell v. Board of Cty. Comm'rs of Saguache Cty.*, 2005 WL 2124842 (D. Colo. Sept. 2, 2005), at *2-4; *Sanders v. Kansas Dep't of Soc. & Rehab. Servs.*, 317 F.Supp.2d 1233, 1250-51 (D. Kan. 2004).

### B. Preemption

With respect to Count I of the complaint, the defendant contends that section 22.02-4 of her MaineCare Benefits Manual ("MBM") is not preempted by 42 U.S.C. § 1396a(a)(17)(D), Motion at 2-5, as the complaint contends, Complaint ¶ 33.  This is so, she asserts, because subsection 17(D) deals with financial eligibility for services while MBM section 22.02-4 deals with medical eligibility for services.  Motion at 4-5.  The state regulation provides, in relevant part, that a plan of care

> must reflect the needs identified by the [Goold Health Systems] assessment, giving consideration to the member's living arrangement, informal supports, and services provided by other public or private funding sources to assure non-duplication of services, including Medicare and MaineCare hospice services.

MBM section 22.02-4, Code Me. R. 10-144 ch. 101, ch. II, § 22.02-4 (effective Oct. 31, 2004). The defendant asserts that this regulation "merely embodies the basic Medicaid requirement that Medicaid funds must be conserved when other sources of services are available." Motion at 4. This latter argument more closely reflects the text of the regulation at issue than does the defendant's assertion that the regulation deals with medical eligibility for services rather than financial eligibility. Nothing on the face of the regulation suggests that it deals with medical eligibility in any way other than requiring that the recipient's plan of care include his or her medical needs as they have already been identified.

The defendant's explanation, that section 22.02-4 "does not ask . . . whether services *could* be provided by someone for free or outside of the Medicaid funding stream" but rather "only whether services are already being provided that should not be duplicated[,]" Defendant's Reply in Support of Her Motion to Dismiss ("Reply") (Docket No. 7) at 3, relies on a distinction without a difference. Determining how many hours of service the MaineCare program will provide based on the number of hours *actually being provided* through another payment source rather than determining how many hours of service will be provided based on how many hours *could be provided* through payment by another source has exactly the same outcome: a reduction in the amount of services provided to the recipient. Indeed, the defendant's interpretation of her regulation could well be more harmful to a recipient than the allegedly differing regulation she posits. Under such a regulation, the recipient would know from the start how many hours of service MaineCare would provide while, under her existing regulation, the recipient will suddenly lose hours of service, if he or she or some third-party decides to pay for additional hours privately. At that point, MaineCare no longer will provide the level of services that Goold Health Systems has determined that the recipient needs. This result certainly appears to be based

on "the financial responsibility of any individual for any . . . recipient of assistance," which is prohibited in some circumstances by 42 U.S.C. § 1396a(a)(17).  *See also Jensen v. Missouri Dep't of Health & Senior Servs.*, 186 S.W.2d 857, 862 (holding that section 1396a(a)(17)(D) addresses "not only financial eligibility but also 'the extent of medical assistance' provided").

State regulations or laws that "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution" are preempted by those federal laws.  *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991).  Where the state statute or regulation "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," preemption renders the state law void.  *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (citation omitted).

Contrary to the defendant's argument, Reply at 3, the complaint does not challenge only her interpretation of her own regulation.  Rather, it presents a direct challenge to the regulation on its face.  Complaint ¶ 33.  On the showing made, I cannot conclude that the regulation does not conflict with 42 U.S.C. § 1396a(a)(17) as a matter of law.  The defendant is not entitled to dismissal of Count I.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **GRANTED** as to Count II of the complaint and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

***Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.***

Dated this 25th day of July, 2008.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge